UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 11, LLC | ) | Case No. 19-22020-pjd |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 11, LLC, | ) | Adversary Proceeding 19-00192 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALEX M. AZAR, II, SECRETARY OF U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; and SEEMA VERMA, ADMINISTRATOR OF CENTERS FOR MEDICARE AND MEDICAID SERVICES, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OBJECTION TO DEBTOR'S EXPEDITED MOTION FOR TEMPORARY RESTRAINING ORDER**

**I.   Introduction**

Defendants, Alex M. Azar, II, in his official capacity as the Secretary of the United States Department of Health and Human Services ("DHHS"), and Seema Verma, in her official capacity as the Administrator of the Centers for Medicare & Medicaid Services ("CMS") (collectively, "Defendants"), by and through the United States Attorney, object to the Debtor's Expedited Motion for a Temporary Restraining Order [Doc. 3]. This matter is about Medicare, 42 U.S.C. §§ 1395 *et seq.*, the program of the Social Security Act that provides federal health insurance to the

1

elderly and the disabled. The Medicare program is administered by CMS, which is a component agency within DHHS.

The Debtor receives Medicare payments for services rendered to Medicare beneficiaries. In this adversary proceeding, the Debtor is complaining about Medicare recoupment, a payment adjustment process that is an integral element of the Medicare payment system for healthcare providers like the Debtor's hospital. The Medicare recoupment process has been well-recognized in a substantial body of bankruptcy case law, including case law in this district. *See In re Tri County Home Health Servs., Inc.* 230 B.R. 106 (Bankr. W.D. Tenn. 1999). Medicare recoupment does not violate or implicate bankruptcy law.

Defendants submit this very brief response in advance of the Court's scheduled hearing on the Debtor's motion for a temporary restraining order on August 29th. Defendants respectfully reserve all rights to brief the issues more fully and to submit any additional relevant documentation prior to any ruling on the Debtor's request for a preliminary injunction.

## II.    Facts

The Debtor operates a small rural hospital that seeks Medicare payments for services rendered to Medicare beneficiaries. Prior to the bankruptcy filing, several Medicare overpayment amounts had been determined, upon reviews of the hospital's Medicare cost reports for several fiscal years and upon a rate review for the 2018 fiscal year. The hospital requested installment terms for these several overpaid amounts. In its discretion, CMS approved the hospital's requests for installment terms. Accordingly, these overpaid amounts are being recouped by means of withholdings in specified amounts each month.

This recoupment was in progress before the bankruptcy filing and has continued since then. The outstanding balance on these overpayments is currently over $1.5 million. Because the

hospital did very little Medicare billing in the spring of 2019, there have not been sufficient Medicare claim payments to withhold as recoupment adjustments in accordance with the approved installment schedules for these overpayments, in recent months.[1]

In late May 2019, an additional $1 million in overpayments was determined, upon the conclusion of a final review of the hospital's FY 2015 Medicare cost report. The hospital subsequently requested installment terms for the treatment of these additional overpayments as well. While the' hospital's request is being reviewed, no recoupment is underway for these particular overpayments.

At the present moment, the hospital has only $193.20 in Medicare claims pending in the claims processing pipeline. This is due to process in the early days of September. Defendants' Exhibit 1. Accordingly, the only Medicare recoupment that can occur in the immediate future is in the amount of $193.20.

### III.    Argument:

**The Debtor is not entitled to a temporary restraining order**

####    A.    The governing standard

The standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are essentially the same. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 362 (6th Cir. 2008). Injunctive relief is an extraordinary remedy. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). A court should pay particular regard for the public consequences in employing it. *Id.*

---

[1] In August 2019, approximately $23,669 has been withheld as recoupment adjustments. (That amount was insufficient to meet the appropriate withholding amount under the approved installment schedules.)

In order to obtain injunctive relief, a movant must establish each of the following four factors: 1) likelihood of prevailing on the merits; 2) likelihood of suffering irreparable injury unless an injunction issues; 3) the balance of equities tips in the movant's favor; and 4) an injunction is in the public interest. *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008). It is the burden of the party seeking an injunction to show that it is entitled to one, not the burden of the other party to show that the movant is not entitled. *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 443 (1974). Where one factor is dispositive, a court need not consider the other factors. *See Ohio Republican Party*, 543 F.3d at 362 (finding little likelihood of plaintiff's success on the merits; hence, "we need not address the other . . . factors . . .").

### B. **The Debtor cannot show a likelihood of success on the merits**

Plaintiff cannot show a likelihood of prevailing on its adversary complaint. The Medicare payment adjustment process of which the Debtor complains is Medicare **recoupment**, *i.e.*, the withholding of the hospital's Medicare payments on account of the Medicare overpayments that the hospital previously received. The recoupment process is an integral element of the Medicare payment system. It does not violate bankruptcy law.

Medicare payments to hospital's such as the Debtor's hospital are issued on an interim basis. The amounts issued are merely estimates of the payment amount that might be due. After the conclusion of each fiscal year, the hospital is required to file a Medicare cost report. The cost report is subject to review. The outcome of the review might be that the hospital received the correct amount. Or the outcome may be that the hospital was either underpaid or overpaid.[2]

---

[2] Small rural hospitals such as the Debtor's, which are called "critical access hospitals" in Medicare parlance, are due to be paid at 101 per cent of the provider's allowable "reasonable cost" of providing services. 42 U.S.C. § 1395f(l)(1); 42 C.F.R. §§ 413.70(a)(1), 413.70(b)(2)(i). Presently, most other types of healthcare providers are paid by Medicare under methodologies other than cost-based reimbursement. The fact that critical access hospitals are still paid on a

If an overpayment is determined to have occurred, the overpayment amount is due to be recouped, by means of a withholding of that previously-overpaid amount from the hospital's ongoing Medicare payments. This payment adjustment process is Medicare recoupment. It is authorized by the basic payment provision of the Medicare statute, at 42 U.S.C. § 1395g(a), which calls for "necessary adjustments" to be made on account of previous overpayments. In a nutshell, Medicare reimbursement to a provider is an ongoing transaction of upfront payments and subsequent recoupment adjustments for any overpayments. Section 1395g(a) is the statutory provision by which Congress defined the Medicare program's substantive liability to a healthcare provider. *U.S. v. Consumer Health Servs. of America, Inc.*, 108 F.3d 390, 394-95 (D.C. Cir. 1997); *Tri County Home Health Servs.*, 230 B.R. at 112. The applicable substantive law governing Medicare payments is, to be sure, Medicare law.[3]

The "overwhelming majority" of district and bankruptcy courts that have addressed the question have recognized the Medicare payment adjustment process on account of previous overpayments as recoupment, which does not violate bankruptcy law. *In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 4 (1st Cir. 2004). Accordingly, courts have found that no relief is appropriate. As noted above, that includes the bankruptcy court for this district. *Tri County*

---

cost-basis means, in practice, that the possibility that they may receive underpayments or overpayments remains relatively high.

The review or audit of the annual Medicare cost report is the chief vehicle by which any underpayments or overpayments are ascertained. In addition, periodic rate reviews are performed during the year.

[3] The nature and extent of property rights in bankruptcy are determined by the `underlying substantive law.'" *Tyler v. DH Capital Mgt., Inc.*, 736 F.3d 455, 461 (6th Cir. 2013) (citing *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15, 20 (2000)). A bankruptcy court is not empowered to create substantive rights or entitlements that are otherwise unavailable under the applicable law. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 n.1 (6th Cir. 2000) (citations omitted).

5

*Home Health Servs.*, 230 B.R. 106; *see, e.g., Sims v. U.S. Dep't of Health & Human Servs. (In re TLC Hosps., Inc.),* 224 F.3d 1008 (9th Cir. 2000); *Consumer Health Servs.*, 108 F.3d 390; *In re S. Inst. for Treatment & Evaluation*, 217 B.R. 962 (Bankr. S.D. Fla. 1998); *also see In re Dist. Mem'l Hosp. of SW N. Carolina, Inc.*, 297 B.R. 451 (Bankr. W.D.N.C. 2002).

Bankruptcy case law widely recognizes that recoupment is unaffected by a filing of bankruptcy. The purpose of recoupment is simply to reach a proper determination as to what a payer owes. *See Reiter v. Cooper*, 507 U.S. 258, 265 n.2 (1993). The automatic stay does not apply to recoupment, because funds subject to recoupment are not the debtor's property. *In re Malinowski*, 156 F.3d 131, 133 (2nd Cir. 1998). Recoupment does not involve a claim against estate property. *In re Madigan*, 270 B.R. 749, 754 (9th BAP 2001). Where another party is entitled to recoupment of funds, the debtor has no interest in those funds. *In the Matter of U.S. Abatement Corp.*, 79 F.3d 393, 398 (5th Cir. 1996). That is why the Bankruptcy Code does not regulate recoupment or even address recoupment at all. *See United Structures v. G.R.G. Eng'g*, SE, 9 F.3d 996, 999 (1st Cir. 1993).

On the basis of the foregoing (and such additional authorities as Defendants may provide in the future), Plaintiff has no substantial likelihood of prevailing on the merits of its complaint about its Medicare payment adjustments. Medicare recoupment does not violate the automatic stay.

### C. **The Debtor cannot not show irreparable harm**

The Supreme Court has advised that monetary loss, such as loss of income, does not constitute irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 63, 89, 90 (1974). In the Medicare arena, too, courts have rejected healthcare providers allegations that irreparable harm may occur, in the absence of relief, because the provider says it may have to shut down. In *Manakee*

*Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995), the Sixth Circuit recognized that a healthcare service's "allegations of financial doom, even if they were substantiated" would not justify a deviation from Medicare law. *See also In re Neuman*, 55 B.R. 702, 704 (S.D.N.Y. 1985) (declining to direct the release of Medicare funds to a hospital although "appellant claimed he would be forced to close the hospital immediately" because of Medicare withholdings).

It cannot be the role of the Medicare program – a benefits program of the Social Security Act, at Title XVIII of the Act -- to ensure a desirable business outcome for every healthcare provider. The Sixth Circuit has noted on more than one occasion that Congress created Medicare primarily for the benefit of the elderly and disabled citizens it insures, *not* as a means to guarantee the financial success of each healthcare provider that seeks Medicare payments as business revenues. *See Baptist Hosp. East v. Sec'y of Health and Human Servs.*, 802 F.2d 860, 868 (6th Cir. 1986) (citing *Green v. Cashman*, 605 F.2d 945, 946 (6th Cir. 1979)). In reviewing a lawsuit by a healthcare provider that had lost its participation in the Medicare program (and had filed bankruptcy on account of the loss of revenue), *Livingston Care Ctr., Inc. v. U.S.*, 934 F.2d 719, 720 (6th Cir. 1991), the Sixth Circuit took the opportunity to advise candidly that Medicare participation is a voluntary undertaking, subject to all the customary laws of economics, *id.* at 721, and it carries with it "no[] assur[ance] of revenues," *id.*

On the facts of the present situation, Defendants note that at this time there is only $193.20 in potential Medicare payments pending in the Medicare claims processing pipeline for the Debtor's hospital. This is all that could be paid by Medicare in the very near future. Defendants' Exhibit 1. Therefore, this is all that could be recouped by Medicare in the very near future. Accordingly, there is very little that could be subject to a temporary restraining order.

7

**D.     Any threatened injury to the Debtor would not outweigh the damage an injunctive order would cause the Medicare program.**

The Debtor cannot show that any threatened injury that might allegedly befall it outweighs the damage that would be caused by the entry of injunctive relief against the operation of Medicare law. "[T]he government s interest in conserving scarce [Medicare] resources . . . is much stronger than the financial interest of a corporation." *Northwest Healthcare, L.P. v. Sullivan*, 793 F.Supp. 724, 727-8 (W.D. Tex. 1992) (citations omitted). There are nearly two million healthcare providers and practitioners that seek Medicare revenues across the country. Each of them is subject to the applicable law, Medicare law, which defines what they may expect from the Medicare program. Defendants have a substantial (and obvious) interest in ensuring that the public funds that Congress has entrusted to Defendants' stewardship are paid out only in accordance with the applicable law.

**E.     An injunctive order would be adverse to the public interest.**

The public interest is always at stake in any request for injunctive relief against a program that administers federal law and public dollars. "The public interest lies in the effective administration of the Medicare Program nationwide." *Group Health, Inc. v. Schweiker*, 549 F.Supp. 135, 145 (S.D. Fla. 1982). A wide range of stakeholders have an interest in the well-being of the Medicare program. As stewards of the program, Defendants have "a critical interest in maintaining the integrity of the Medicare program for the benefit of providers, patients, and taxpayers generally." *Neurological Assocs.- H. Hooshmand, M.D., P.A. v. Bowen*, 658 F.Supp. 468, 473 (S.D. Fla. 1987). The Medicare statute and regulations, and no other authority, define the Medicare program's liability to a particular provider. This entails the recoupment of Medicare overpayments -- an integral element of the Medicare payment system.

## IV.  Conclusion

For the foregoing reasons, Defendants respectfully submit that the standards for a temporary restraining order are not met, and that no temporary restraining order should be entered.

Approved for Entry

D. Michael Dunavant

/s/ Monica M. Simmons-Jones
Monica M. Simmons-Jones (BPR #018892)
Assistant United States Attorney
167 N. Main Street Suite 800
Memphis, Tennessee  38103
(901) 544-4231

/s/ Stuart J. Canale
Stuart J. Canale (BPR #012590)
Assistant United States Attorney
167 N. Main Street Suite 800
Memphis, Tennessee 38103
(901) 544-4231